**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WILLIAM D. and GAIL D.,<br>on behalf of their minor daughter,<br>N.M.,<br><br>                Plaintiffs,<br><br>        v.<br><br>WILLIAM CHEN, JOHN HO,<br>VLADIMIR LEVICHEV, and SAMIL SILTA,<br>in their individual capacities,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 12-10066-WGY |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Defendants William Chen, John Ho, and Vladimir Levichev have each filed a Motion for

Summary Judgment under Fed. R. Civ. P. 56, each with a respective Memorandum of Law in

Support. Defendants Ho and Levichev have filed a joint Statement of Facts; Defendant Chen relies

on his own Statement of Facts. Each Defendant argues that these facts establish probable cause to

arrest N.M., the minor Plaintiff, or that Defendants are entitled to qualified immunity. Defendant

Levichev also claims that he was not sufficiently involved in the arrest to be liable, and seeks

summary judgment on that basis as well.

Defendants are not entitled to summary judgment on any claim. Their arguments rely on

disputed facts, which Defendants ask this Court to view in the light most favorable to themselves.

Defendants also omit or selectively reference material facts necessary to decide the legal issues

presented. For example, Defendants do not mention that the victim *repeatedly* told Chen and Ho that

N.M. "didn't do anything" and "wasn't involved" in the robbery. They also fail to mention that

Defendant Ho told N.M. she was free to leave shortly before arresting her. Defendants ignore two independent witnesses—the Boys & Girls Club's Director of Operations and Program Director—both of whom corroborate N.M.'s allegations that she was arrested without probable cause. Plaintiffs' have included their own statement of facts below to address these issues.[1]

Disputed facts establish that Defendants did not have even arguable probable cause to arrest N.M. for joint venture armed robbery. Defendants' qualified immunity argument rests entirely on their claim that the facts support probable cause; there is no claim that applicable law was unsettled. Because all of Defendants' arguments are premised upon a genuine dispute of material facts, and these facts establish that N.M. was arrested without probable cause, Defendants' motions for summary judgment should be denied.

## II.   <u>PLAINTIFFS' STATEMENT OF FACTS</u>

1.      On January 20, 2011, N.M. was fifteen years old. She was in eighth grade. After school that afternoon, N.M. and her friend J.N. went to a Burger King located at Brighton Avenue and Allston Street in Boston. N.M. and J.N. ate and socialized with some friends, then left for an afterschool program at the West End House Boys & Girls Club on Allston Street.[2]

2.      N.M. and J.N. walked along Allston Street by themselves. As they walked, the girls realized that a group of five or more high-school-aged boys were walking behind them.[3] Both N.M. and J.N. were uncomfortable with the boys following them.[4] N.M. heard one of the boys state that

---

[1] Plaintiffs have also filed separate replies to both of Defendants' Statements of Fact as required by Local Rule 56.1.

[2] *Exhibit A*, N.M. Dep. at 50-52; *Exhibit B*, J.N. Dep. at 39.

[3] *Exhibit A*, N.M. Dep. at 53-55; *Exhibit B*, J.N. Dep. at 41-42.

[4] *Exhibit A*, N.M. Dep. at 53; *Exhibit B*, J.N. Dep. at 43-44.

he was going to "rob that nigger," and N.M. feared that the boy may have been planning to rob her.[5]

N.M. and J.N. crossed the street to get away from the group.[6]

3.      From across the street, N.M. and J.N. saw some of the boys in the group approach a

young man, who has been identified as Raymond Feng, also walking on Allston Street. N.M. heard

someone threaten Feng with a knife and saw one of the boys, E.S., steal Feng's iPod.[7] According to

Feng, N.M. and J.N. "were just there. They didn't take any action whatsoever. They weren't involved

in the robbery. They didn't say anything."[8]

4.      N.M. and J.N. continued walking down Allston Street toward the Boys & Girls Club

during the robbery.[9] Feng ran down a side street just after the robbery. He saw that the group of

boys were walking down Allston Street in the direction of the Boys & Girls Club, but did not watch

them long enough to see where anyone went. He called 911.[10]

5.      Defendant police officers Chen, Ho, and Levichev were dispatched to the call. The

dispatcher stated over the radio that the victim described being robbed by "a group of five black

males, thirteen to sixteen years of age." The dispatcher said, "There were two black females with

them" and the group was seen going "toward the West End Boys & Girls Club." The dispatcher

described one of the males as "wearing a green baseball cap and skinny."[11] Defendants Chen, Ho,

---

[5] *Exhibit A*, N.M. Dep. at 53-56.

[6] *Exhibit A*, N.M. Dep. at 53-55; *Exhibit B*, J.N. Dep. at 43-46.

[7] *Exhibit A*, N.M. Dep. at 61-62; *Exhibit B*, J.N. Dep. at 51-53. Feng was a minor at the time of the incident but is now an adult. *See Exhibit C*, Feng Dep. at 5.

[8] *Exhibit C*, Feng Dep. at 29.

[9] *Exhibit A*, N.M. Dep. at 63-64; *Exhibit B*, J.N. Dep. at 52-53.

[10] *Exhibit C*, Feng Dep. at 10-11, 14-16, 65-66, 75.

[11] *Exhibit G*, Audio Recording of 911 Call and Police Radio Transmissions ("Radio Recordings") at 4:57-6:03.

and Levichev heard these statements over the radio. They also received this information by text message on the computers in their police cars.[12]

6.      Defendants Chen and Ho were partners in a two-person car. They were the first officers to arrive at the Boys & Girls Club.[13] Feng arrived at about the same time.[14] Ho saw a black male wearing a green baseball cap standing in the Boys & Girls Club parking lot. As Ho approached the man, Feng yelled, "That's the [m----- f-----] who robbed me." Ho placed the man, E.S., in custody.[15]

7.      Feng pointed to J.N. and N.M., who were standing together near the front door of the Boys & Girls Club, and said, "They were there, but they didn't do anything." Defendant Chen heard this statement.[16] He did not ask the victim to explain what he meant by saying the girls were "there" but "didn't do anything."[17]

8.      The Director of Operations and the Program Director of the Boys & Girls Club, Kristen Rhuda and Jenny Nute, came outside after noticing the police presence. Rhuda and Nute saw that J.N. was upset and yelling, but that N.M. was calm.[18] Defendants Chen and Ho arrested J.N. a few minutes after Rhuda and Nute came outside.[19]

9.      Both Rhuda and Nute heard Feng telling police that while N.M. appeared to be part of the group, she "didn't do anything" and "wasn't involved" in the robbery.[20] Nute understood that

---

[12] *Exhibit D*, Chen Dep. at 27, 29; *Exhibit E*, Ho Dep. at 25-28; *Exhibit F*, Levichev Dep. at 10-11, 14-15; *Exhibit H*, Computer Aided Dispatch ("CAD") Report.

[13] *Exhibit D*, Chen Dep. at 47; *Exhibit E*, Ho Dep. at 10, 29-30.

[14] *Exhibit C*, Feng Dep. at 18; *Exhibit E*, Ho Dep. at 31.

[15] *Exhibit D*, Chen Dep. at 11; *Exhibit E*, Ho Dep. at 29-31.

[16] *Exhibit A*, N.M. Dep. at 91-92; *Exhibit C*, Feng Dep. at 27, 34-35; *Exhibit D*, Chen Dep. at 108.

[17] *Exhibit D*, Chen Dep. at 18, 75, 108.

[18] *Exhibit I*, Rhuda Dep. at 11, 31-34; *Exhibit J*, Nute Dep. at 8, 23, 27.

[19] *Exhibit A*, N.M. Dep. at 91; *Exhibit B*, J.N. Dep. at 67-68; *Exhibit J*, Nute Dep. at 28, 36.

[20] *Exhibit I*, Rhuda Dep. at 38-39, 45-46, 48, 59, 71; *Exhibit J*, Nute Dep. at 35-37.

Feng was describing N.M. as "being almost like a witness" who saw the crime.[21] N.M. waited outside while the officers got more information. She waited for approximately twenty minutes. N.M. was not in handcuffs.[22]

10.     Defendant Levichev arrived at the Boys & Girls Club a few minutes after Ho and Chen. Feng told the officers that he had been robbed by a group of approximately five black males. After arresting E.S., Chen stated over his radio that they had one suspect in custody and were looking for "four more inside the building."[23] Levichev and Ho took the victim inside the building in an attempt to locate additional suspects. Nute accompanied the officers through the building. Feng did not identify any additional suspects inside the building.[24]

11.     When Levichev and Ho came back outside, Ho asked to search N.M.'s backpack and pockets. N.M. cooperated, handing the officer her backpack and turning her pockets inside out. Ho found only textbooks in N.M.'s bag.[25]

12.     After N.M. had been searched, Feng again said that N.M. "didn't do anything" and "wasn't involved" in the robbery.[26] Chen took Feng aside and Feng repeated these statements. Feng felt that Chen "brushed it off" when he said that N.M. was not involved in the robbery.[27] Rhuda and Nute heard Feng's statements to the police officers. They understood that the point Feng was making to officers was that N.M. "had nothing to do with the robbery."[28]

---

[21] *Exhibit J*, Nute Dep. at 37-38, 62-63.

[22] *Exhibit A*, N.M. Dep. at 102-104; *Exhibit D*, Chen Dep. at 51-52; *Exhibit I*, Rhuda Dep. at 40-41; *Exhibit J*, Nute Dep. at 45-46.

[23] *Exhibit D*, Chen Dep. at 32-35; *Exhibit G*, Radio Recordings at 8:37-8:49.

[24] *Exhibit C*, Feng Dep. at 18; *Exhibit E*, Ho Dep. at 32, 42; *Exhibit F*, Levichev Dep. at 10-12, 16; *Exhibit J*, Nute Dep. at 28-30.

[25] *Exhibit A*, N.M. Dep. at 103; *Exhibit J*, Nute Dep. at 32; *see also Exhibit E*, Ho Dep. at 93-94.

[26] *Exhibit A*, N.M. Dep. at 97-100; *Exhibit I*, Rhuda Dep. at 45-46; *Exhibit J*, Nute Dep. at 35.

[27] *Exhibit C*, Feng Dep. at 43.

[28] *Exhibit I*, Rhuda Dep. at 39, 64; *Exhibit J*, Nute Dep. at 61-63.

13.     After hearing these statements, Rhuda asked Ho if N.M. was free to leave. Ho said that N.M. was free to go. N.M. stayed outside with Rhuda and Nute.[29]

14.     Despite Ho telling N.M. that she was free to leave, Chen intended to arrest her for joint venture armed robbery. Chen told Ho to "take her too," meaning arrest N.M. Although Ho had just told N.M. that she was free to go, Ho handcuffed N.M.[30]

15.     All of the information that Chen and Ho relied on to establish probable cause to arrest N.M. came from Feng.[31] Chen and Ho knew that Feng had been robbed by a group of five or more black males, that N.M. was "there" with the group when the robbery occurred, but that she "didn't do anything" and "wasn't involved" in the robbery, and that the group had walked toward the Boys & Girls Club after the robbery.[32]

16.     None of the Defendants asked Feng for more information about the crime or what he meant when he said N.M. "didn't do anything" and "wasn't involved." Defendants had no information about where N.M. was standing during the robbery, what she was doing during the robbery, or whether she said or did anything at all.[33] Defendants also admit having no information to suggest N.M. had knowledge that E.S. intended to rob someone, and no information suggesting that N.M. had knowledge of a weapon.[34]

17.     Chen and Ho did not know the elements of joint venture when they decided to arrest N.M. When questioned by superior officers about this incident, Ho stated his understanding of the law of joint venture as follows: "Joint venture [is] to be present that's about it, to be present at

---

[29] *Exhibit E*, Ho Dep. at 43-44; *Exhibit I*, Rhuda Dep. at 44-45; *Exhibit J*, Nute Dep. at 43-45.

[30] *Exhibit D*, Chen Dep. at 74, 87-88; *Exhibit E*, Ho Dep. at 32, 47; *Exhibit I*, Rhuda Dep. at 46-47; *Exhibit J*, Nute Dep. at 45-46.

[31] *Exhibit D*, Chen Dep. at 96-97; *Exhibit E*, Ho Dep. at 104-105.

[32] *Exhibit C*, Feng Dep. at 10-11, 27-28, 40, 65-66; *Exhibit D*, Chen Dep. at 9-11, 29, 32-35, 104-105; *Exhibit E*, Ho Dep. at 37, 42-43.

[33] *Exhibit D*, Chen Dep. at 18, 22-23, 75, 99, 102-103, 108; *Exhibit E*, Ho Dep. at 36-39.

[34] *Exhibit D*, Chen Dep. at 20-22, 100.

the time of the crime."[35] In his deposition, Chen described presence at the scene of a crime with a

group as sufficient to establish probable cause to arrest.[36]

18.    Chen and Ho transported N.M. to the D-14 police station in Brighton.[37] At the

station, Levichev requested that he be assigned as the arresting officer so that he could write the

incident report and the applications for criminal complaints.[38] Levichev wrote the report and signed

the application for criminal complaint as the arresting officer.[39]

19.    Levichev and Chen talked about what facts to include in the report. Chen told

Levichev that the victim had said N.M. "wasn't involved" and "didn't do anything."[40] Levichev did

not include these exculpatory facts in the incident report.[41] Levichev showed the report to either

Chen or Ho before submitting it to a supervisor.[42]

20.    When questioned by superior officers about this incident, Chen denied that the

victim had ever said N.M. "was not involved" or "didn't do anything." He now admits that the

victim made these statements.[43]

21.    The application for a criminal complaint against N.M. falsely stated that she

"participated in the crime." Levichev signed the application as complainant.[44]

---

[35] *Exhibit L*, Boston Police Department Internal Affairs Division Interview of John Ho ("Ho IAD Interview") at 26; *see also Exhibit E*, Ho Dep. at 102-104.

[36] *Exhibit D*, Chen Dep. at 20-23.

[37] *Exhibit D*, Chen Dep. at 110; *Exhibit E*, Ho Dep. at 54.

[38] *Exhibit E*, Ho Dep. at 110-111.

[39] *Exhibit F*, Levichev Dep. at 8-9.

[40] *Exhibit D*, Chen Dep. at 8, 102, 108, 113-114; *Exhibit F*, Levichev Dep. at 8, 26.

[41] *Exhibit N*, Incident Report.

[42] *Exhibit F*, Levichev Dep. at 31.

[43] *Exhibit K*, Boston Police Department Internal Affairs Division Interview of William Chen ("Chen IAD Interview") at 13, 35, 37; *Exhibit D*, Chen Dep. at 88, 94, 105, 108.

[44] *Exhibit F*, Levichev Dep. at 9; *Exhibit O*, Application for Criminal Complaint.

22.     A criminal complaint charging N.M. with armed robbery issued on January 21, 2011. N.M.'s motion to dismiss the charge was allowed on February 17, 2011, and the case was dismissed.[45]

## III.   ARGUMENT

### A.     Legal Standard

Summary judgment is appropriate only when there are no disputes as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The facts must be considered in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). The qualified immunity doctrine does not change the standard rules of procedure. "Where a qualified immunity defense is advanced by pretrial motion, 'normal summary judgment standards' control." *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir. 1990) (quoting *Rogers v. Fair*, 902 F.2d 140, 142 (1st Cir. 1990)). The district court must accept the facts of the party opposing qualified immunity to determine whether a constitutional violation could be found. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005). This Court must determine whether there are factual issues for trial. *Asociación de Periodistas de Puerto Rico v. Mueller*, 529 F.3d 52, 56 (1st Cir. 2008).

### B.     Summary Judgment Is Inappropriate On Plaintiffs' Fourth Amendment Claim for False Arrest

In considering a Section 1983 claim for a false arrest, federal courts look to state law to determine the elements of a crime. *See Iacobucci v. Boulter*, 193 F.2d 14, 23-24 (1st Cir. 1999). In Massachusetts, police officers may arrest a person for participating in a joint venture crime when they have probable cause to believe that the person was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3)

---

[45] *Exhibit P*, Juvenile Court Docket.

by agreement, was willing and available to help the other if necessary. *See Commonwealth v. Zanetti*, 454 Mass. 449, 455 (2009); *Commonwealth v. Bianco*, 388 Mass. 358, 366 (1983).[46] The defendant must share the mental state for the crime, or share the intent that the crime be committed. *Commonwealth v. Cannon*, 449 Mass. 462, 468 (2007); *Commonwealth v. Souza*, 428 Mass. 478 (1998). In the context of an armed robbery, the defendant must also have known that a weapon was present. *Commonwealth v. Fickett*, 403 Mass. 194, 197 (1988); *Commonwealth v. Watson*, 388 Mass. 536, 544 (1983).

"Probable cause exists where 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" *Nuon v. City of Lowell*, 768 F. Supp. 2d 323, 329 (D. Mass. 2011) (quoting *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir. 1987)). "The exact degree of certainty required to establish probable cause is difficult to quantify, but it falls somewhere between bare suspicion and what would be needed to justify conviction." *Id.* at 329-30. The touchstone of the inquiry is reasonableness. *Burke v. Town of Walpole*, 405 F.3d 66, 80 (1st Cir. 2005). "Probable cause is evaluated as of the moment an arrest is made, based on the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information." *Nuon*, 768 F. Supp. 2d at 330; *see also United States v. Reyes*, 225 F.3d 71, 75 (1st Cir. 2000) (probable cause determined "using a totality of the circumstances standard") (quotation omitted).

### 1. Defendants Chen and Ho did not have probable cause to arrest N.M. for joint venture armed robbery.

Defendants did not have probable cause to arrest N.M. The initial dispatch to which Defendants responded stated that the victim had been robbed by a "group of five black males."

---

[46] Each Defendant notes the Supreme Judicial Court's announcement in *Zanetti* that criminal liability should be discussed in terms of aiding and abetting rather than joint venture. 454 Mass. at 467. The scope of liability under both doctrines is identical, *id.* at 468, and the SJC has clarified that *Zanetti* pertains only to the language of criminal jury instructions. *See Commonwealth v. Jansen*, 459 Mass. 21, 28 n.20 (2011). It is undisputed in this case that the law of joint venture was clearly established at the time of N.M.'s arrest.

Chen and Ho had heard from the dispatcher that two black females had been "with the group." After Chen and Ho arrived on scene, the victim told the officers that the girls had been "there" but "didn't do anything." All of the information about the crime came from the victim. Feng repeatedly told Chen and Ho that N.M. had not been involved in the crime, and that the robbery was committed by a group of five or more black males. There was no ambiguity in what Feng was telling the officers: N.M. was present but had nothing to do with the robbery. Ho responded to this by telling N.M. she was free to leave. Chen, however, "brushed it off" and instructed Ho to arrest N.M.

Defendants ask this Court to ignore many of these facts in assessing probable cause. They suggest that there was probable cause to arrest N.M. because the victim told Defendants that (1) N.M. had been present at the scene as part of the group, (2) she remained at the scene during the crime, (3) she left the scene in the same direction as the group, and (4) she was present with E.S. when Defendants arrived at the Boys & Girls Club. *See Deft. Chen's Mem. in Support of Summ. J.* ("*Chen Mem.*") [Document #80] at 6-7; *Deft. Ho's Mem. in Support of Summ. J.* ("*Ho Mem.*") [Document #72] at 8.[47] This argument fails for two reasons. First, Defendants' argument establishes only one element of the crime: presence at the scene. They admit having no information that N.M. had done or said anything that would establish probable cause as to the remaining elements of the crime. Second, probable cause is based on the *totality* of the circumstances; police officers are not free to selectively disregard information that negates the existence of probable cause.

"[L]aw enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not [be] unduly hampered . . . if the agents . . wait[] to obtain more facts before seeking to arrest." *Keuhl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (quotation omitted). "An officer

---

[47] Defendants' memoranda repeatedly suggest that Feng described N.M. "fleeing" with the group. It is unclear from the record that Feng ever told Defendants that the group "fled." He described to officers that the group had walked away after the robbery in the same direction they had been travelling earlier *See* Plaintiffs' Statement of Facts, above at ¶¶ 15-16; *Exhibit C*, Feng Dep. at 10-11, 65-66, 81-82.

need not conduct a 'mini-trial' before making an arrest . . . but probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Id.* (citations omitted); *see also White v. Town of Marblehead*, 989 F. Supp. 345, 352 n.10 (D. Mass. 1997) (citing *Commonwealth v. Walker*, 370 Mass. 548, 560 (1976)) ("Police officers in Massachusetts may not consciously disregard exculpatory evidence that serves to discredit an earlier probable cause determination."); *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (police "may not disregard facts tending to dissipate probable cause"); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (police officer "may not close her or his eyes to facts that would help clarify the circumstances of an arrest").

Here, Defendants Chen and Ho failed to conduct even the most basic investigation. They knew only that N.M. had been present at the scene with a group of black males, some of whom had robbed the victim, and that she had left the scene going in the same direction as the group. "It is axiomatic that mere presence at the scene of the crime and the 'failure to take affirmative steps to prevent it do not render a person liable as a participant.'" *Commonwealth v. Avery*, 44 Mass. App. Ct. 781, 782-83 (1998) (quoting *Commonwealth v. Benders*, 361 Mass. 704, 708 (1972)). "The necessity for proving facts other than presence has been explained as an essential safeguard against the danger of assuming the complicity of all in attendance whenever group activity is involved." *Id.* at 783. Both Chen and Ho admit they had no facts to indicate N.M. knew that anyone intended to commit a crime, no facts to suggest N.M. knew a weapon was present, and no facts to suggest that N.M. was willing and available to assist. These were all elements of the crime for which Defendants were required to have probable cause but did not. *See, e.g., Avery*, 44 Mass. App. Ct. at 782 ("What is singularly lacking in the evidence . . . is any proof that the defendant had any knowledge that the [assailant] intended to assault and rob [the victim].")

Nor did Chen and Ho ask the victim to explain what he meant by saying that N.M. was "there" but "didn't do anything" and "wasn't involved" in the robbery. The officers did not ask for

any additional information to clarify what N.M. may have done during the robbery. For twenty minutes, Defendants disregarded the victim's repeated and plainly exculpatory statements about N.M. and failed to take any action to investigate what actually happened during the crime. Had they asked, Feng would have explained that the girls "were just there. They didn't take any action whatsoever. They weren't involved in the robbery. They didn't say anything."[48] Probable cause cannot exist where such minimal questioning would have prevented N.M.'s arrest and prosecution.

Despite these facts, Defendants argue that probable cause existed because N.M. left the scene with the group. This argument misstates the law. Massachusetts courts have long rejected the notion that presence and flight are sufficient to establish joint venture liability, even if done together with a group. *See Avery*, 44 Mass. App. Ct. at 782-83 (concluding that evidence of joint venture was insufficient where defendant was engaged in drug deal with assailant, was present with assailant during armed robbery, and fled with assailant after the crime); *see also Commonwealth v. Perry*, 357 Mass. 149, 151 (1970) ("[E]vidence that the defendant knew the three persons who . . . committed the robbery and assault, that he associated with them, and that he was in their company both before and after the robbery . . . is not enough to convict on either charge."); *Commonwealth v. Fancy*, 349 Mass. 196, 200 (1965) ("[I]t can readily be inferred that [the defendant] associated with persons who committed the larceny, but this does not justify the inference that he participated in the crime."); *Commonwealth v. Chinn*, 6 Mass. App. Ct. 714, 717 (1978) ("Even if the jury could have found that the defendant associated with person who committed the crimes, that did not justify an inference that she had participated in their commission.").

In attempting to refute this principle, Defendants rely on cases where the evidence showed a group acting with common purpose. For example, Defendants rely on the unpublished decision in *Commonwealth v. Lakeisha L.*, 70 Mass. App. Ct. 1109 (2007), where four young girls followed,

---

[48] *Exhibit C*, Feng Dep. at 29.

approached, and robbed an undercover police officer. The court focused on the "critical question" of whether the defendant "acted with knowledge of the robbery and with the intent to assist in the commission of the crime," and found sufficient evidence from the group's "multiple exhortations to take the money, and the concerted flight and laughter following the robbery." *Id.* at *1. Defendant Chen also cites *Robinson v. Cook*, 706 F.3d 25 (1st Cir. 2013), where the court concluded that probable cause existed to arrest the passenger of a vehicle for aiding and abetting the driver's hit-and-run. The court described probable cause as a "close question," but ultimately established because the passenger was "shouting and swearing" at the victim immediately before the assault. *Id.* at 36. Thus, it was plausible for police to infer "that the car's occupants were acting in concert." *Id.*

In this case, by contrast, Chen and Ho admit having no information to suggest that the group was acting in concert. They did not know whether N.M. said or did anything during the robbery, much less whether she had the knowledge or intent required for a joint venture. Defendants heard that N.M. was present at the scene where "a group of five black males" committed a robbery; she "didn't do anything" and "wasn't involved" in the crime, and then left the scene in the same direction as the perpetrators. This information simply does not establish probable cause to believe N.M. was part of a joint venture. *See Robinson*, 706 F.3d at 36 ("[P]olice must show some additional circumstances [beyond proximity to a criminal act] from which it is reasonable to infer participation in criminal activity.").

### 2.    Defendant Levichev is jointly liable for N.M.'s false arrest.

Defendant Levichev contends that he is entitled to summary judgment because he "was not involved in Plaintiff's arrest" and "did not act together with Officer Ho or Officer Chen in effectuating N.M.'s arrest." [49] *Deft. Levichev Mem. in Support of Summ. J.* ("*Levichev Mem.*") [Document

---

[49] Levichev's argument is particularly ironic on the facts of this case. For purposes of his own liability, Levichev claims that he "was not involved" in the arrest, despite working together with Chen and Ho to write an inaccurate and

#74] at 4. This argument ignores disputed facts about Defendant Levichev's conduct and misstates his role as an arresting officer and the author of the police report.

The scope of joint liability under 42 U.S.C. § 1983 is well established: "when the defendants act together, the law permits the injured party to treat all concerned in the injury jointly; and all are liable to the plaintiff." *Hall v. Ochs*, 817 F.2d 920, 926 (1st Cir. 1987). "It is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury." *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985); *see also Wesby v. District of Columbia*, 841 F. Supp. 2d 20, 41 (D.D.C. 2012) (concluding that officers who responded to scene, did not take anyone into custody, but later wrote arrest reports were jointly liable with arresting officers on § 1983 false arrest claim).

In this case, Defendant Levichev's conduct is sufficient to make him jointly liable for N.M.'s false arrest. Levichev responded to the Boys & Girls Club after searching the area for a group of black males. He worked together with Chen and Ho at the scene, and walked through the building with Feng to search for additional male suspects. After N.M. was transported to the police station, Levichev requested that he be assigned as the arresting officer so that he could write the incident report and apply for the criminal complaint against N.M. In doing so, Levichev discussed with Chen the facts necessary for the incident report, including the victim's statements that N.M. "didn't do anything" and "wasn't involved" in the crime. Aware of the victim's statements, Levichev chose to continue assisting Chen and Ho as an arresting officer. Levichev wrote the incident report but omitted any mention of the victim's exculpatory statements about N.M. He then signed his name to an application for a criminal complaint against N.M. that contained false information. Levichev showed his police report to either Chen or Ho for approval before submitting it to a supervisor.

incomplete police report. As to N.M.'s criminal liability, however, he suggests that Defendants were entitled to believe she *was* involved, despite the victim's repeated statements to the contrary.

Levichev was an integral part of N.M.'s arrest, acted jointly with Chen and Ho and therefore is jointly liable. *See Wesby*, 841 F. Supp. 2d at 41.[50]

### 3.       Defendants are not entitled to qualified immunity.

In evaluating a claim of qualified immunity, the Court considers "'(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'" *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011) (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)). Under the second prong, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.* The Court considers the clarity of the law at the time of the alleged violation and "whether, given the facts of the particular case, a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." *Id.* Where the law is clearly established and the dispositive issue is whether the defendant acted reasonably, the First Circuit has stated that the proper course is to deny summary judgment so that the issue can be resolved by a jury. *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir. 1997) (citing *Consolo v. George*, 58 F.3d 791, 794 (1st Cir. 1995)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) ("If the law was clearly established, the immunity defense should ordinarily fail, since a reasonably competent public official should know the law governing his conduct.").

In this case, there is no dispute that the law of joint venture and the law requiring officers to have probable cause to arrest were clearly established at the time of the incident. Defendants' sole argument with respect to qualified immunity is that they acted reasonably because they arguably had

---

[50] Levichev cites only two cases to support his claim that he was not sufficiently involved in the arrest to be jointly liable: *Braga v. Hudson*, 605 F.3d 58, 61 (1st Cir. 2010) and *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Both cases involve failed attempts to raise supervisory liability claims under § 1983. The cases do not support the proposition that the arresting officer who fails to disclose exculpatory evidence in preparing the police report, thus making it appear that the arrest was supported by probable cause, may escape liability.

probable cause to arrest N.M. This argument simply repeats the same disputed facts discussed above—Defendants contend that if these disputed facts are insufficient to establish probable cause, they might nevertheless establish arguable probable cause sufficient for qualified immunity. Like Defendants' flawed argument regarding probable cause, this claim ignores critical facts.

For example, Defendants imply the victim only once stated that N.M. "didn't do anything." Defendants ignore evidence that the victim *repeatedly* said N.M. "didn't do anything" and "wasn't involved" in the crime. Defendants neither asked nor learned whether there were any facts beyond N.M.'s presence at the scene to support a joint venture charge. They did not ask if N.M. said or did anything during or after the crime. They had no idea whether N.M. had knowledge that a crime was going to be committed. Defendant Ho even told N.M. she was free to leave before Chen instructed that she be arrested. Defendants' argument for qualified immunity ignores these facts.[51] No reasonable officer would believe that these facts even arguably establish probable cause to arrest N.M.[52]

Defendants' argument for qualified immunity must also fail because they were not acting as reasonable police officers in arresting N.M. "[R]easonable police officers are expected to know the law." *Wagenmann v. Adams*, 829 F.2d 196, 209 (1st Cir. 1987). Thus, reasonable police officers know that an arrest for joint venture requires probable cause to believe three things: (1) presence at the scene of the crime; (2) with knowledge that another intends to commit the crime or with intent to commit a crime; (3) by agreement, being willing and available to help the other if necessary. *See Commonwealth v. Zanetti*, 454 Mass. 449, 455 (2009). When questioned by superior officers about N.M.'s arrest, however, Defendant Ho stated his understanding of joint venture as follows: "Joint

---

[51] In any event, even if it were the case that the victim had said only once that N.M. "didn't do anything," a reasonable officer would have investigated further before arresting her.

[52] Plaintiffs will soon file a motion with this Court seeking disclosure of an allegedly privileged statement in Defendant Ho's interview with internal affairs investigators. The statement was inadvertently provided to Plaintiffs' counsel, and Plaintiffs contend it is not privileged. If disclosed, the statement provides further support that no reasonable police officer would have believed there was probable cause to arrest N.M.

venture [is] to be present that's about it, to be present at the time of the crime." Chen answered

similarly at his deposition, stating that N.M.'s presence at the scene was sufficient to satisfy all three

elements. *See* Plaintiffs' Statement of Facts, above at ¶ 17.

Reasonable police officers also do not lie to cover up their misconduct. *Cf. Aponte Matos v.

Toledo Davila*, 135 F.3d 182, 185 (1st Cir. 1998) ("[W]e have no doubt that officers reasonably

understand that they may not lie in order to establish probable cause."). Had N.M.'s arrest simply

been a mistaken judgment call as Defendants claim, they would have been honest and

straightforward when questioned by superior officers. This did not happen. Defendants Chen and

Ho gave their superior officers false and misleading answers to basic questions. Chen denied hearing

the victim say N.M. "didn't do anything" and "wasn't involved" in the robbery, although he now

admits hearing these statements multiple times. In addition, Ho denied that he ever told N.M. she

was free to leave. If a jury credits the testimony of N.M., Nute, and Rhuda, who all heard Ho tell

N.M. she was free to leave, the jury would conclude that Ho also lied to superior officers. Chen

claims to have told Levichev about the victim's statements that N.M. "didn't do anything" and

"wasn't involved" in the robbery, but Levichev did not include these facts in the police report. A

jury could find that the officers chose to file an inaccurate police report to support their arrest of

N.M. Qualified immunity does not protect police officers who arrest someone without probable

cause, without knowing the law, and then lie to cover up their misconduct. That is the case here.

Defendants are not entitled to qualified immunity.

**C.      Summary Judgment Is Inappropriate On Plaintiffs' False Imprisonment Claim.**

The elements of the tort of false imprisonment are "the (1) intentional and (2) unlawful (3)

confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is

harmed by such confinement." *Noel v. Town of Plymouth*, 895 F. Supp. 346, 354 (D. Mass 1995); *see also*

*Jonielunas* v. *City of Worcester Police Dept.*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004); *Ball v. Wal-Mart,*

*Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000). Defendants do not dispute four of these elements; they argue only that N.M.'s imprisonment was lawful because they had probable cause to arrest her. As discussed above, Chen and Ho did not have probable cause to arrest N.M. and, consequently, are not entitled to summary judgment on Plaintiffs' false imprisonment claim. *See Daley v. Harber*, 234 F.Supp.2d 27, 32 (D. Mass. 2002) ("Because there was no probable cause for [Plaintiff's] arrest, it follows that [Defendant's] actions constituted false imprisonment as a matter of law."); *Noel*, 895 F. Supp. at 354.

Defendant Levichev argues that he is entitled to summary judgment on the false imprisonment claim because he "did not participate in the arrest of N.M." *Levichev Mem.* [Document #74] at 7-8. He contends that M.G.L. ch. 263, § 3, exempts him from liability because he was not an "arresting officer." Like Levichev's argument with respect to the civil rights claim, his position here rests on disputed facts. But plaintiff has facts to establish that Levichev asked to be assigned as the arresting officer. He wrote the incident report and applied for a criminal complaint against N.M., causing N.M. to remain in custody overnight. Levichev discussed with Chen that the victim had said N.M. "didn't do anything" and "wasn't involved," but omitted any reference to these exculpatory statements from his report. Thus Levichev was directly involved in causing N.M.'s arrest and imprisonment and is jointly liable on this claim with Defendants Chen and Ho. *See Jonielunas*, 338 F. Supp. 2d at 177 ("[A] police officer may be liable for false imprisonment where, either directly or indirectly, he causes the false arrest of a putative tort claimant.").

### D.   Summary Judgment Is Inappropriate On Plaintiffs' Malicious Prosecution Claim.

For a successful malicious prosecution claim in Massachusetts, a plaintiff must show "1) that the defendant initiated a criminal action against him; 2) that the criminal prosecution ended in [the plaintiff's] favor; 3) that there was no probable cause to initiate the criminal charge; and 4) that the defendant acted maliciously." *Santiago v. Fenton,* 891 F.2d 373, 387 (1st. Cir. 1989). Defendants

concede that the first two elements of the claim are met. The claim turns on the existence of probable cause and malice.

> 1.    **Defendants lacked probable cause to commence a criminal prosecution against N.M.**

The probable cause standard in a malicious prosecution claim is an objective one. *Gouin v. Gouin*, 249 F.Supp.2d 62, 71 (D. Mass. 2003). Such "probable cause has been defined as 'such a state of facts in the mind of the [defendant] as would lead a [person] of ordinary caution and prudence to believe, or entertain an honest and strong suspicion,' that the plaintiff has committed a crime." *Bednarz v. Bednarz*, 27 Mass. App. Ct. 668, 671 (1989) (quoting *Lincoln v. Shea*, 361 Mass. 1, 4-5 (1972)).

Defendants claim they had probable cause to arrest N.M. for joint venture armed robbery. As discussed above, Defendants lacked the requisite "state of facts ... as would lead a person of ordinary caution and prudence" to believe that N.M. was anything other than present at the scene of a crime. As they lacked probable cause to arrest N.M. for joint venture armed robbery, they also lacked probable cause to initiate a criminal prosecution against her.

> 2.    **Lack of probable cause to initiate criminal prosecution constitutes malice.**

The absence of probable cause alone can establish malice for purposes of a malicious prosecution claim. *See Seelig v. Harvard Coop. Soc'y*, 355 Mass. 532, 538 (1969); *Pihl v. Morris*, 319 Mass. 577, 580 ("Malice also could be inferred . . . from want of probable cause."). Malice exists if a jury finds that police officers made an arrest or brought criminal charges to cover up an officer's misconduct. *Santiago*, 891 F.2d at 388.

A jury could find that Defendants brought charges against N.M. in an effort to conceal the fact that they arrested her without probable cause. Defendants Chen and Levichev discussed the facts to include in the police report, including the victim's statements that N.M. "didn't do anything" and "wasn't involved," but these officers ultimately produced a report and application for criminal

complaint that contained no such exculpatory facts. The police report also falsely stated that the victim described N.M. as being part of the group of five who robbed him. In fact, the victim repeatedly said he was robbed "by a group of five black males." That Defendants sought to cover up their misconduct by bringing charges against N.M. is further supported by Defendant Chen's false statements to superior officers denying that the victim had ever said N.M. "was not involved" in the robbery. For the reasons discussed above, Defendants lacked probable cause to arrest and to prosecute N.M. A jury could conclude on this evidence that they acted with malice. Summary judgment on this claim should be denied.

## IV.    CONCLUSION

The Court should deny Defendants' motions for summary judgment in their entirety.

RESPECTFULLY SUBMITTED,
For the Plaintiffs,
By their attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
David Milton, BBO #668908
Drew Glassroth, BBO #681725
**Law Offices Of Howard Friedman, P.C.**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com
dglassroth@civil-rights-law.com

Date: April 17, 2013

### CERTIFICATE OF SERVICE

I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for each party via ECF.

Dated: April 17, 2013        /s/ Howard Friedman
                             Howard Friedman